McNemry et ux., Appellants, *v.* Bellevue Borough.

Argued October 3, 1930.  Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*William S. Doty,* with him *Thomas A. Thornton,* for appellants.—All doubts and disputes must be determined and all inferences drawn in favor of plaintiffs and in support of the verdict, and all testimony to the contrary disregarded: Smith v. Steel Car Co., 262 Pa. 550; Jester v. R. R., 267 Pa. 10; Keidel v. R. R., 281 Pa. 289; Richards v. Transit Co., 299 Pa. 163.

There is not a word in any ordinance of the Boroughs of Bellevue or Avalon, requiring a formal "permit" to connect with this sewer.

There is a presumption of good faith and regularity in all cases, and the party charged with unlawful conduct is not called upon to offer evidence of anything until this adversary, charging him with tort or crime, has first proved it: Winlack v. Geist, 107 Pa. 297, 300-301; Dowd v. Crow, 205 Pa. 214, 219.

Still further, the learned Superior Court disregarded the rule that the finding of facts and the drawing of inferences therefrom is for the jury, and proceeded unlawfully and contrary to the decisions of this court to substitute its own findings of fact and inferences therefrom for those reached by the jury.

Defendant, having knowingly permitted plaintiffs to use its sewer under claim of right, without objection, could not lawfully injure them by its negligence: Brown v. Lynn, 31 Pa. 510; Fitzpatrick v. Penfield, 267 Pa. 564.

The law is clear that people using the property of another in good faith, and under the belief that such use is

not objected to, which belief has been induced by the action of the owner in knowingly permitting such use without objection for a long time, are not mere trespassers, and may not be negligently injured by the owner: Kay v. R. R., 65 Pa. 269, 273; Millum v. Coal Co., 225 Pa. 214, 217; O'Leary v. R. R., 248 Pa. 4; Counizzarri v. R. R., 248 Pa. 474, 477; John v. Dairy Co., 281 Pa. 543.

Defendant, having knowingly permitted valuable rights to be acquired for a consideration, over a long period, under currently accepted interpretation of an ordinance, is estopped to destroy those rights, while retaining the consideration, by belated insistence on a different interpretation: Ingram Boro. v. Crofton Boro., 52 Pitts. L. J. 362; Thompson v. Boro., 45 Pa. C. C. R. 364.

Strict compliance, even with a condition precedent, may be waived by the acquiescence of the municipality: Allen v. Swarthmore, 25 Pa. C. C. R. 458; Oakdale Boro. v. Knepper, 96 Pa. Superior Ct. 517.

Indirect connection was not forbidden and was evidently intended: Keidel v. R. R., 281 Pa. 289, 291; Richards v. P. R. T., 299 Pa. 163, 168; Smith v. Steel Car Co., 262 Pa. 550, 555; Jester v. R. R., 267 Pa. 10, 13.

*Harry J. Thomas,* for appellee.—The only attempt made by plaintiffs to show any impossibility of connecting with the 18-inch sewer was not in regard to their property but whether or not it was possible for 25 property owners to connect.

Plaintiffs do not show they made any compliance with the provisions of the ordinance of the Borough of Bellevue by making an application in writing to council of defendant borough, etc., which would have bound them to be governed by the provisions of the ordinance of defendant borough. This prevented defendant borough being given any opportunity of seeing that the provisions of its ordinances were followed.

The right of a municipality to regulate and control use of its drains and sewers is a necessary incident of their ownership: Kilcullen v. Webster, 63 Pa. Superior Ct. 309.

As the law is definitely settled in other jurisdictions that plaintiffs are without a remedy against defendant borough, it is just as definitely settled that the law is the same in Pennsylvania: Dasher v. Harrisburg, 20 Pa. Superior Ct. 79.

The 8-inch sewer on South Star Avenue did not exist at the time of the construction of the 18-inch sewer, and, having been constructed subsequently, defendant borough had the right to prescribe the terms on which it could be used. Defendant borough having set forth the terms, plaintiffs were bound to a strict compliance.

Defendant borough has not been guilty of such negligence as to warrant a verdict for plaintiffs.

Plaintiffs cannot recover for the nuisance they alleged had occurred after the first flood: Thompson v. DeLong, 267 Pa. 213.

OPINION BY MR. JUSTICE SCHAFFER, November 24, 1930:

This action was brought by plaintiffs, owners of a house in the Borough of Avalon, to recover damages from the Borough of Bellevue, caused by the backing up of sewer contents into the cellar of their dwelling from a sewer belonging to defendant borough with which their drain was connected. There is no question as to the defendant's negligence due to its permitting the sewer to get in disrepair. The controversy is as to whether, under the circumstances as they were shown, defendant owed any duty to plaintiffs growing out of its maintenance of and plaintiffs' connection with the sewer.

The result of the trial in the common pleas was a verdict in plaintiffs' favor, upon which judgment was entered. On appeal to the Superior Court, the judgment

was reversed and was there entered for defendant. Our allowance of an appeal brings the record before us for final review.

In order to grasp the legal question involved, it is necessary to understand the geography of the two boroughs, Avalon and Bellevue, which adjoin, the relation of two sewers to each other and the situation created by an agreement between the two boroughs relative to one of them.

The boundary line between the two municipalities is in the main an irregular line. In order to carry out its plans for a sewerage system, the Borough of Bellevue in 1898 asked for and obtained the consent of the Borough of Avalon to lay an eighteen-inch main sewer near the boundary line between the two boroughs but within the limits of Avalon. This sewer when constructed extended from a point where South Star Avenue, a street in the Borough of Bellevue, intersects West Street, a highway located partly in each borough, to the Ohio River. In the agreement between the two municipalities it was stipulated that "the Borough of Avalon shall have a right to grant permission to property owners, not to exceed twenty-five, to connect with and use the said sewer." South Star Avenue lies wholly within the Borough of Bellevue. Part of the boundary line between the two municipalities is the property line on the west side of South Star Avenue. Plaintiffs' property is located entirely in the Borough of Avalon at the corner of South Star Avenue and West Street. The eighteen-inch sewer is laid in the bed of West Street alongside their property. After the construction of the eighteen-inch sewer, the Borough of Bellevue about 1901 laid an eight-inch sewer in the bed of South Star Avenue, which connected with the eighteen-inch sewer. In 1912 plaintiffs' predecessor in title connected their property with the eight-inch sewer, but not with the eighteen-inch sewer. The point of connection into the eight-inch sewer was only a

short distance from where it joined the eighteen-inch sewer, not more than twenty-five feet therefrom.

It is the contention of plaintiffs that their connection with the eight-inch sewer was in pursuance of the agreement between the two boroughs that twenty-five residents of Avalon could connect with the eighteen-inch sewer; that it could not have been the understanding between the municipalities that the connections which should be made with the larger sewer were to be directly with it, as, owing to the lay of the ground, this would not be feasible, the eighteen-inch sewer running down a steep ravine, where houses could not be connected directly with it; that the agreement implied that the connection might be an indirect one into the smaller sewer which drained into the larger. The position of defendant is that plaintiffs had no right to connect with the eight-inch sewer, until they complied with certain of its ordinances providing how connection should be made, and that permission from it to make the connection with the eight-inch sewer had never been granted to plaintiffs or their predecessors. According to defendant, plaintiffs were trespassers in making the connection with the eight-inch sewer and no duty was owed to them; this was the view of the Superior Court. We are unable to reach this conclusion. To our minds, the testimony indicates that the connection which was made with the eight-inch sewer was in pursuance of the agreement between the two municipalities; whether plaintiffs drained into the larger sewer directly or through the smaller one would seem to us immaterial, considering the location of their property. In effect, what Avalon stipulated for in the agreement which it made with Bellevue was, that the sewer which it gave the latter the right to lay in its territory might be used for the drainage of the homes of twenty-five of its residents. The testimony discloses that the authorities of Bellevue knew that houses located in Avelon fronting on South Star Avenue had connected with the eight-inch sewer. They

knew when the first trouble arose with the eight-inch sewer and when it first began to back up water that it was backing it into the cellars of these residents of Avalon. It attempted to repair the sewer in order to afford them relief, but was unsuccessful in its efforts to do so and finally entered into an agreement with Avalon to reconstruct the sewer at the joint expense of the two municipalities and permitted plaintiffs and other houses to connect with the reconstructed sewer. As was observed by the able president judge who tried the case, Judge Evans, "If the twenty-five residents of the Borough of Avalon had no right to connect with the eighteen-inch sewer through the eight-inch sewer, then certainly there was no obligation on the part of the officials of the Borough of Avalon to pay any part of the cost of repairing the eight-inch sewer when it was crushed."

In its opinion the Superior Court says: "It is true the Borough of Avalon had the right to grant to plaintiffs or their predecessor the right to connect with the eighteen-inch sewer. The difficulty is that the connection is not with the eighteen-inch, but with the eight-inch, sewer. Plaintiffs' endeavor to avoid the effect of this situation by saying, first, that since the eighteen-inch sewer was a trunk pipe laid in a ravine, making direct connection impossible, it must necessarily have been intended that indirect connection, such as in this case, would be permissible, and, secondly, that the practical construction placed upon the agreement since it went into effect bears this out. This does not impress us. The agreement provides that connections with the sewer are to be determined by the engineers of both boroughs; this indicates that direct connections were contemplated and they have, in fact, been made. An Avalon sewer, draining several houses in that borough, does connect directly with the eighteen-inch sewer. The evidence is conflicting whether it is possible for plaintiffs' own house to drain directly into the large sewer (one Avalon house

is so connected), but whether this is feasible or not is immaterial; although plaintiffs stress the point, no blanket permission is given by the agreement," and concluded that the case came within the rule of Dasher v. Harrisburg, 20 Pa. Superior Ct. 79, that, where one connects with a sewer without authority and in violation of a city ordinance, the city is not liable to him for injuries resulting from the negligent maintenance of the sewer.

We think this too restricted a view of the situation. The Borough of Bellevue had granted permission to twenty-five residents of Avalon to connect with the eighteen-inch sewer. . This was the price the former paid to the latter for the privilege of laying the sewer in its territory. The evidence indicates that twenty-five houses could not connect directly with the eighteen-inch sewer. The authorities of Bellevue knew that residents of Avalon had connected indirectly therewith by tapping their drains into the eight-inch sewer. This was done at least as early as 1912, at which time plaintiffs' property was connected with the smaller sewer. They and the others who made the connections continued to use the eight-inch sewer and through it to drain into the eighteen-inch sewer until the trouble arose in the eight-inch sewer in 1923, eleven years thereafter, without objection from Bellevue. The borough engineer of Bellevue testified that there had been no objection raised by anyone in an official capacity in that borough to plaintiffs' connection with the eight-inch sewer and that it would not be feasible to connect twenty-five or anything like that number of houses with the eighteen-inch sewer, that the way it would have to be done would be to lay a sewer on top of the bluff and connect it into the eighteen-inch sewer. Under the circumstances we think it does not lie in the mouth of defendant to disclaim a duty to plaintiffs to adequately maintain the eight-inch sewer, by straining the point that they were entitled to connect only directly with the eighteen-inch sewer. Particularly is this so, in view of the length of time that connection had been made

with the smaller sewer and when the subsequent acts of the borough in permitting a connection by the plaintiffs and other residents of Avalon with the eight-inch sewer, as it was reconstructed, are taken into account. It is immaterial that plaintiffs in making their connection did not comply with the ordinance of the Borough of Bellevue. The agreement between the two boroughs provided that Avalon should have the right to grant the permission to property owners to connect with and use the eighteen-inch sewer and there is nothing in the contract between them which required the twenty-five Avalon householders to conform to the sewer regulations of Bellevue. Avalon is not raising any question about the permission to plaintiffs to connect.

The verdict established on sufficient evidence that the sewer connection was made with defendant's knowledge, and at least tacit acquiescence, and has continued ever since without objection from it or without suggestion that it was in any manner improper or unauthorized. The evidence also establishes that defendant knew of plaintiffs' connection eleven years before the injury. We are of opinion that the evidence sustains the conclusion that there was a permissive use by plaintiffs of the eight-inch sewer and defendant having permitted them to use it at least under a supposed right to do so without objection, could not injure them by its negligence without responding for the damage done.

The agreement between the two boroughs does not stipulate that the twenty-five landowners are to be directly connected with the eighteen-inch sewer. If it did, the agreement would amount to nothing, because physically they could not do so. To connect with does not necessarily mean a direct connection. The defendant argues that the connection with the eight-inch sewer was an action on the part of plaintiffs' predecessors in title without authority, permission or license from either the Borough of Avalon or the Borough of Bellevue. This position is not maintainable in the light of the contract

between the two boroughs and Bellevue's tacit approval of the connection as made. If it were not for the agreement permitting the use of the eighteen-inch sewer by the twenty-five residents of Avalon, an entirely different question would be presented, but, with it appearing, it cannot be said that plaintiffs connected with the eight-inch sewer without any right whatever.

While it is true the agreement between the two boroughs provided that the location and size of the connections to be made with the sewer were to be determined by the engineers of the two municipalities, we think this does not necessarily mean that every connection made by a householder with a branch sewer which emptied into the eighteen-inch sewer would have to be determined upon by the engineers. If a branch sewer had been built by the Borough of Avalon to enable twenty-five property owners to gain access to the eighteen-inch sewer, the reason for the approval of the connections with the branch sewer by the two engineers would not exist. What the Borough of Bellevue was interested in was that when a connection was made with the main sewer, it should be a proper one.

The situation with which we are dealing is quite out of the ordinary and rules which would be applied usually in the matter of sewer connections cannot be justly invoked. The secretary of the Borough of Avalon testified that there is no ordinance of that municipality requiring persons about to connect with a sewer to take out a permit, that the only permit required is that for opening of the street, but as the street to be opened in this instance, in which the eight-inch sewer was laid, is a street of the Borough of Bellevue, entirely within its corporate limits, it is obvious that no permit could be granted by Avalon to open it. There is nothing shown which literally meets the language of the agreement between the two boroughs by evidencing that Avalon in some formal way had granted permission to plaintiff's predecessor to connect with the sewer. The agreement,

provides "that the Borough of Avalon shall have the right to grant permission to property owners not to exceed twenty-five, to connect with and use the said sewer." It is obvious, however, that Avalon considered that it had granted the permission to plaintiffs and others, because, in a communication addressed by it to Bellevue Borough Council after the break in the sewer, wherein attention was called to the damage being done to properties fronting on the street but located in Avalon it was set forth "You [Bellevue] were given a grant by the Borough of Avalon to lay this sewer over the land of the Borough of Avalon by ordinance. In this ordinance the Borough of Avalon was given the right to make a certain number of house connections into said sewer. Some connections have been made but the Borough of Avalon has not made the total number of connections permitted to be made by it under said ordinance." We think the conclusion fairly arises that plaintiffs and their predecessor in title had received the permission of Avalon to connect with the sewer. Subsequently the two boroughs at their joint expense rebuilt it and Bellevue recognized the right of plaintiffs and other residents of Avalon to continue to maintain a connection therewith by permitting them to reconnect with it when reconstructed. Bellevue with knowledge that the connections had been made and of course with knowledge of the agreement never objected to them.

The fact, if it be a fact, that there are more than twenty-five residents of Avalon now connected with the sewer does not alter the situation, because at the time plaintiffs' house was connected there were not twenty-five. Defendant's remedy for this situation is to cause those in excess of twenty-five to disconnect or to connect on its terms.

Defendant calls attention to the fact that under the agreement between the two municipalities, no surface or storm water was to be admitted to the eighteen-inch sewer and there is evidence that the roof water from

plaintiffs' house was conducted through the eight-inch sewer into the larger one. This seems to have been acquiesced in by the defendant borough so far as water from the roofs of houses was concerned, and that was all plaintiffs drained into the sewer. It did not carry off the ordinary surface or storm water which accumulated on the land.

So far as the contention of defendant is concerned that plaintiffs were guilty of contributory negligence in not taking measures to safeguard themselves after the first flooding of their property took place, it is sufficient to point out that the principal part of the damage was apparently done by the first flooding, and we conclude that the inference does not fairly arise that plaintiffs were negligent in not connecting their property, after it occurred, with the eighteen-inch sewer, if they could have done so. Having notified defendant of the condition which existed and it having made endeavors to remedy the situation, plaintiffs were warranted in concluding that the endeavors of the borough in this respect would be successfully carried through.

The judgment of the Superior Court is reversed and that of the common pleas is reinstated and affirmed.