**RICKETTS et v MANSFIELD (city) et**

Ohio' Appeals, 5th Dist, Richland Co

No 393. Decided January, 1932

Lewis Brucker, Mansfield, and Van C. Cook, Mansfield, for plaintiffs.

William F. Black, Mansfield, and C. H. Henkle, Mansfield, for defendants.

242

LEMERT, J.

First, concerning the modification of franchise paving obligations, we are compelled to give consideration to the proper application of §§3771 and 9102, GC.

Since Ordinance No. 990 expressly repealed §6 of Ordinance No. 120 and modified the paving obligations of the Utility, and since the Utility accepted the new Ordinance, No. 990, and same had gone into effect, as provided by law, before any legislation had been passed concerning the East Fourth Street improvement, it necessarily follows that plaintiffs can not maintain their action if Council had the legal right to take the action it did.

Sec 3771 GC provides:

"No grant or removal of a grant for the construction or operation of a street railroad, shall be valid for a greater period than twenty-five years from the date of such grant or renewal of a grant is made, whether by special or general ordinance, the municipality shall not, during the term of such grant or renewal, release the grantee from any obligation or liability imposed by the terms of such grant or renewal of a grant."

Sec 9102 GC, provides:

"After such grant, or the renewal of any grant has been made, by general or special ordinance, or the order of county commissioners, neither the municipality nor commissioners shall release a grantee from any obligations or liabilities imposed by the terms of the grant, or renewal of any grant, during the term for which such grant or

renewal was made."

It will be noted the almost identical wording of these two statutes, namely, that the grantee shall not be released from any obligations or liabilities imposed by the terms of the grant.

An early construction of the meaning of this phrase was made in the case of Clement v City of Cincinnati, 10 Weekly Law Bulletin, 355; the syllabus being as follows:

"A modification of a contract between the City and the owner of a street railroad route, made in good faith, for the better accommodation of the public is not void by virtue of §2502, Rev. Statutes (now §3771 GC) as a release of the grantee of such route from an obligation, although in consideration of more rapid transportation involving a greater expense a higher rate of fare is permitted."

The Court at page 356 says:

"It is contended for plaintiff that the effect of this ordinance is to release the owner of route No. 10 from the obligation to carry passengers at the rates provided in the original grant. The position of the defendant in that the clause of the statute just quoted was not intended to forbid a modification of the agreement between the city and the grantee of the right to operate a street railroad, but only the voluntary surrender by the city of any of the rights secured to itself or the public thereby."

"In our opinion the clause of the statute in question was intended to prohibit only the giving away by the city of some right secured to it or the public by the contract under which street railroads are operated. This certainly is the ordinary import of the term 'release from liability.' It is a mere letting go or relinquishment, and where that is the manifest object of the action of the city, it is void, whatever form it be made to assume. But where the manifest object of the city is to discharge its duty to the public, and its action is taken in good faith to that end, and has actually had that effect, the fact that by a strained and unnatural construction it may be said to release a street railroad company from an obligation when it merely changes the terms of the obligation, does not avoid its action."

"It is not a release but a modification made in good faith for a sufficient consideration, and does not fall within the prohibition of the statute."

In 107 Oh St, 551, we find the following

by the Supreme Court:

"A grant made in good faith by a board of county commissioners to an interurban company, wherein certain obligations relating to rates of fare and frequency of service imposed in a former franchise are relinquished, is not void by virtue of §9102, GC. if the considerations supporting the second grant are substantial and advantageous to the public."

On page 554 of the opinion, the court says:

"What is meant by the clause 'release the grantee from any obligations or liabilities imposed·by the terms of the grant'? Evidently it was not intended to mean that an interurban company and the board of county commissioners, or a utility and a municipality, could never modify stipulations of an existing grant in case the modification should be mutually beneficial. Such a construction cannot be so narrowly applied, etc. This clause means, and we think it has been so held by this court, that such obligations may not be released except for a consideration advantageous to the public. This was the effect of the holding in Clements v City of Cincinnati." (The case hereinbefore cited).

"That case was inferentially approved by this court when it refused leave to file a petition in error from the Superior Court of Cincinnati."

And at page 556 the court says:

"Whether the officials of a municipality or county may release a grantee from the obligations·of an existing franchise depends upon whether the public has received a substantial consideration therefor. If the public did not act in good faith in protecting the public interest, but absolved the company from its contractual obligations without obtaining a corresponding consideration advantageous to the public, manifestly the grant would be inhibited under the section quoted."

We note that in the McClure case, 107 Oh St 561 the second grant was made and the obligations modified when the Railway represented that 'it was not financially able to meet the burden of paving costs under the old franchise; a situation parallel with the instant case.

Another helpful case to be found, 194 U. S., 517, 537, wherein the Supreme Court, in referring to an Ohio case, made the following statement:

"On reasoning commending itself, that a modification of a contract between a municipality and the owner of a street railroad, made in good faith for the better accommodation of the public, is not void by virtue of §9102, GC."

"Whenever in the opinion of the city council the public welfare would be promoted thereby, it may by agreement with a street railway company, terminate a grant for any period not in excess of the limitation fixed by statute."

So, giving consideration to the foregoing holdings and referring to Ordinance 990, wherein consideration is specifically mentioned, we note the following:

"Whereas said Company and its predecessors have heretofore been required to construct, maintain and keep in repair a large amount of paving on various streets in the City of Mansfield, Ohio, and

"Whereas such paving cost has become and is burdensome and if continued in the future will make impossible the operation of said street railway system and will necessitate abandonment thereon of the withdrawal of such service, and

"Whereas it is for the public convenience and welfare that such service be continued, and,

"Whereas, it is inequitable and unjust that said Company or its successors be burdened by the cost of paving, repaving or repairing other than as herein provided," etc.

So that we believe that the making it possible for the continued operation of the Street Railway system, where such continuance was considered by the Council as impossible without such relief, in the interests of the public convenience and welfare, and made in good faith to accomplish such purpose, was a valid, substantial and advantageous consideration.

But, going further, as to whether or not there was an actual legal consideration, we believe the City of Mansfield had authority to modify the franchise provisions without consent of the Utility, because it was the exercise of a power of local self-government under §3 of **Article 18 of the Ohio Constitution**, as amended in 1912. It should be noted that the authorities hereinbefore quoted, construing §§3771 and 9102, GC, were prior to the 1912 Constitutional Amendments.

**Article 18, §3, of the Constitution** provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

"Since the Constitution of 1912 became operative all municipalities derive all their powers of local self-government from the Constitution direct, by virtue of §3, **Article 18**, thereof."

"The power to establish, open, improve, maintain and repair public streets within the municipality, and fully control the use of them is included within the term powers of local self-government."

"The grant of power in §3, **Article 18**, is extended equally to municipalities that do adopt a charter as well as those who do not adopt a charter, the charter being only the mode provided by the constitution for a new delegation or distribution of the power already granted in the Constitution."

**Village of Perrysburg v Ridgeway, 108 Oh St 245.**

"It has always been recognized, before 1912 as well as after, that matters relating to all local improvements, such as roads, streets, ditches and the like, have been peculiarly matters of local concern and control."

In the case of **Allion v City of Toledo, 99 Oh St, 416,** it was held as follows:

"Unless there is a clear and palable abuse of power, a court will not substitute its judgment for legislative discretion. Local authorities are presumed to be familiar with local conditions and to know the needs of the community."

Therefore, we find and believe that it is purely a matter of local concern whether a City requires the Railway to pay the entire cost of paving or only a part of the cost or the cost only of foundations, etc.

It might be said that a more direct application in the instant case could be gathered from the Utility Constitutional provisions in **§§4 and 5 of Article 18 of the Constitution. §4 of Article 18** specifically empowers the City to contract with utilities for its product, in the following language:

"Section 4. Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility, the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service."

Section 5, empowers and authorizes a reference pertaining to such ordinances, where 10 per cent of the electors of the city petition for same, thus furnishing an adequate remedy if the franchise provisions between the city and utility are not satisfactory to the people.

So that we find and hold that all Statutes limiting or conflicting with the power given to municipalities by **§4 of Article 18 of the Constitution** to own, operate, and contract with, public utilities, are invalid.

**Section 4 of Article 18** is self-executing, and no action of the Legislature is essential to empower a municipality and a public utility to enter into a valid contract for the product or service of the Utility, and the City has plenary power to do any of the things enumerated.

93 Oh St, 236; 102 Oh St, 336.

"**Article 18, §4, of the Ohio Constitution,** as amended September 3, 1912, confers complete power upon Municipalities to own and operate public utilities and to contract with such Utilities for product and service and to fix the rate therefor. All legislative enactments restricting, limiting or conflicting with this power are invalid."

100 Oh St, 416; 102 Oh St, 336.

So that we hold that wherein §§3771 and 9102 GC, limit or conflict with the powers given a Municipality by **§§3 and 4 of the Constitution,** that the Constitution and not the Statute must control and prevail.

We note from the record that Ordinance No 990, modifying the franchise provisions as to paying obligations was passed November 8, 1926, or about 2 months prior to the first legislation concerning the East Fourth Street improvement.

No referendum proceedings were taken. The right to a referendum expired in thirty days from November 8, 1926. The amended franchise was not made as a part of the instant improvement, and made no reference to it, and was in force over a month before the first improvement resolution was passed. It affected all owners of property abutting on all streets on which street cars are operated, as well as taxpayers in general, and was a matter in which all of the people of the City were interested. Thereafter the Council might or it might not increase the portion of paving costs to be paid by abutting owners, on respective street improvements, much as would be the situation on a street where no car line existed. But whatever improvement legislation it might

thereafter pass, such fact is not material upon the question of its power to amend the franchise.

If a municipality has power to contract with a Utility, it likewise has power to modify that contract or make a new contract, for reasons deemed to be for the public convenience and welfare of its citizens, and there is nothing in the record before us to show that the Council did not .act in good faith, for what it considered the best interests of the City.

As to the last defense, that of estoppel: We find from the record that the plaintiffs petitioned Council for the improvement of this street and sent a delegation to Council to urge the same in October, 1926.

The record shows that the Railways are not being assessed according to the former franchise. Actual and constructive notice is given of the various proceedings. Personal notice is served after the first Resolution is passed, showing the properties to be assessed on the abutting lot owners. These plaintiffs saw the improvement being made in front of their homes. They had an opportunity to check the assessment lists and receive personal notice of the cash payment assessments. They did not object. They made no protest. They did nothing. And they have made their payments for nearly two years after the improvement is completed.

**Sec 3845, GC,** provides that if any person objects to an assessment he shall file his objections in writing with the clerk within two weeks after the expiration of such notice.

In the case of the **City of Cuyahoga Falls v Beck, 110 Oh St, 82,** the court at page 90 says:

"It is thus evident that the notice referred to in §3848 GC is the notice provided for in §3895, GC, and that the person objecting to an assessment must file his objections in writing with the clerk wtihin two weeks after the Council has published, etc."

At page 93 the Court says:

"And yet the rule is generally applied that the failure of a property owner, duly notified of proposed improvement proceedings, to avail himself. of the opportunity to remonstrate to the local authorities, whose duty it is to pass upon the same, will preclude him in subsequent proceedings from insisting that his property was wrongfully assessed for a portion of the cost. The rule extends, moreover, not only to objections raised to assessments upon the ground that

no benefits have been conferred, but also to objections that the proceedings violate the Statute."

Ellis, Ohio Municipal Code, 8th Ed., page 389, says:

"All of these sections appear to apply as well to assessments made by the foot front, or according to tax value, as when made according to benefits."

While it is perhaps true that mere silence is not sufficient for an estoppel, yet if the parties have promoted the improvement, or have not resisted the assessment when an attempt is made to enforce it, then estoppel will arise.

**Lewis v Symmes, 61 Oh St, 471.**

**Columbus v Agler, 44 Oh St, 485.**

Therefore, for the reasons heretofore given, we find and believe that the judgment of the trial court in dismissing the petition of plaintiffs was correct, and that is the opinion of this court, reached upon the appeal of this case, so the same finding and judgment will be entered in this court as was· entered in the court below. Petition in error dismissed at costs of plaintiffs. Exceptions may be noted.

MONTGOMERY and SHERICK, JJ, concur.