**CLEVELAND (CITY), Plaintiff-Appellant, v VILLAGE OF CUYAHOGA HEIGHTS, ET, Defendants-Appellees.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20692. Decided June 16, 1947.

Lee C. Howley, Director of Law, Cleveland, and Jas. M. McSweeney, Asst. Director of Law, Cleveland, for plaintiff-appellant.

Walter & Haverfield, Cleveland, for Defendants-Appellees.

## OPINION

By HURD, PJ.

This is an action for injunction, whereby plaintiff appellant, City of Cleveland, seeks to restrain defendants appellees from connecting with and discharging sewage into the southerly interceptor sewer constructed and maintained by the City of Cleveland through the Village of Cuyahoga Heights. The Court of Common Pleas denied the injunction and dismissed the petition, and the case is now in this court on trial "de

novo" having been submitted by agreement on the record made below.

In the interests of brevity, the plaintiff appellant, City of Cleveland, and the defendant appellee, Village of Cuyahoga Heights, will hereafter be designated as the "City" and the "Village" respectively.

When the case came into this court on appeal the Village had completed the work of constructing a sewer within its territorial limits connecting with the southerly intercepting sewer of the City, located in the Village. By stipulation of the parties it was agreed that the Village would not attempt to discharge sewage into the City's interceptor until the determination of the case in this court.

At the conclusion of oral arguments in this case an application was made by counsel that the court view the premises in a body. This application was granted and the members of the court, together with counsel and the engineers respectively of the City and the Village, joined in an inspection of the property in Cuyahoga Heights where the sewage disposal plant of the City is located.

While a number of issues were raised and decided in the Common Pleas Court it is conceded now that the sole question to be determined in this court is the validity of a certain contract by and between the City of Cleveland and the Village of Newburgh Heights, dated August 11, 1916, to the rights and liabilities of which the Village of Cuyahoga Heights succeeded by reason of proceedings in 1919 whereby the territory now comprising the Village of Cuyahoga Heights was detached from Newburgh Heights. The provisions of the contract in controversy are as follows:

"First: That the Village of Newburgh Heights, hereby grants to the City of Cleveland full permission and authority to construct an intercepting sewer and to convey sewage therein upon and along one of the following routes, as said City of Cleveland may determine, to-wit:

\* \* \* \* \* \* \*

"C. The Village of Newburgh Heights is hereby given the right to connect, at its sole cost and expense, any and all of its present or future sanitary sewers with said intercepting sewer, or with any portion of the City's intercepting sewer now constructed, by means of said manholes and said openings as shown on the said map hereto attached, and to discharge all of its present and future sanitary sewage into said intercepting sewer, subject only to the limitations hereinafter

set forth, and said sewage shall be disposed of by said City of Cleveland in like manner as other sewage conveyed through said intercepting sewer without cost or expense to the Village of Newburgh Heights.

"Third:  In the event that the sewage conveyed through said intercepting sewer should be disposed of at any future time by the City of Cleveland, at any point within the Village of Newburgh Heights in a manner objectionable to the public authorities of said Village, and the disposal of said sewage within the said Village should be permanently prevented by said Village by court proceedings or otherwise, then the future. right of the Village to discharge any sewage in said intercepting sewer now built as provided in subparagraph "C" shall thereupon cease and determine."  *  *  *  *

It is the claim of the City that the contract is void and against public policy, because by its terms the legislative officers of the City surrender for all time its free, legislative authority; because it grants a perpetual property right in the Village to have its sewage disposed of through the southerly intercepting sewer free of charge, and as a burden on the taxpayers of the City of Cleveland and is therefore ultra vires; and that the contract fails because no measureable consideration moved to the City for the granting of the right claimed by the Village.

The record in this case is voluminous and we think it unnecessary to detail at length the conduct of the parties with respect to the contract in question.  For the purpose of this opinion we think it is sufficient to state that the record herein discloses that for a period of approximately 30 years from the date of the contract in 1916 to the date of the filing of the original petition herein, on July 23, 1946, the parties have continuously recognized and discharged their mutual obligations under the contract.

The City of Cleveland has enjoyed the benefits of the contract (1) by the operation of its southerly interceptor sewer through the territory of the Village and (2) by the construction of its sewage disposal plant within the Village in 1926 and by the maintenance and operation and expansion thereof to take care of sewage in an ever-increasing volume since that date.  Also the record shows that all of the sludge produced in the City's easterly sewage disposal plant along Lake Erie is pumped to the southerly disposal plant in Cuyahoga Heights, and is there treated and disposed of by the City.

It is our opinion that the use of this land for sewage disposal purposes has imposed and continues to impose upon the Village and its inhabitants, a substantial continuing burden, even though the land used is owned by the City. The disposal plant installed in the Village with its receiving and concentration tanks, sludge digestion and storage tanks, sandbeds for drying the digested sludge and other similar processes constitutes a burden of nuisance proportions which renders the entire area and the land adjacent to it practically worthless for any other useful purposes.

Were it not for the agreement in question and the permits granted by the Village in pursuance thereof, in our opinion such a burden could not be successfully imposed upon the Village or its inhabitants against their will.

As late as 1938 the City recognized and affirmed its obligations under the contract when it adopted an ordinance fixing rates to be charged to other adjoining municipalities for discharging sewage into its sewage system.

Section 2 of said ordinance is as follows:

"The provisions of this ordinance **shall not impair the obligation of the City of Cleveland to furnish without charge to the Village of Cuyahoga Heights the sewage treatment facilities of the City of Cleveland in accordance with an existing agreement entered into as a part of the consideration for permitting the location of the southerly sewage treatment works within the limits of the territory now included in Cuyahoga Heights."** (emphasis ours)

In many other instances, directly and indirectly, the City has recognized its obligations under the contract during the period from 1916 to 1946 until the dispute occurred in the instant case.

The City does not here claim that it was without authority to enter into an agreement with the predecessor in interest of the Village for the extension of its sewage system through the territory of the Village but that it was without authority to agree to contract for the disposal of the sewage of the Village free of charge in consideration of the benefits accruing to it from the agreement.

It is well settled that a municipal corporation has the power to make and enter into contracts which are necessary or proper to enable it to perform its functions.

See among others, the following authorities:

3 McQuillin, Municipal Corporations 2d Ed. Rev. Sec. 1269.

Case v Dillon, 2 Oh St 607 at page 622.

The **Ohio Constitution** adopted in 1912, **Article XVIII, Section 4,** grants the right to municipalities to acquire, construct, own, lease and operate public utilities within or without their corporate limits as follows:

"4. Public Utilities: Acquisition of; Any Municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the products or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service."

This section of the Constitution is self-executing and cannot be limited by statute, nor does it need statutory enactment to give it life. **Ricketts v Mansfield, 43 Oh Ap 316,** 183 N. E. 181; **Priest v Wapakoneta, 24 Abs. 214;** Kuertz v Gas & Elec. Co., 27 N. P. (N. S.) 221.

Under the above stated elementary principle of power of municipal corporations to contract, a municipality clearly has the power and authority to contract with other municipalities on such terms as the parties deem reasonable in order to exercise the powers granted to them by the Constitution of Ohio.

The construction and maintenance of sewers, drains and sewage disposal works are functions expressly conferred upon municipal corporations by the statutes of Ohio. **Sec. 3616 GC,** provides that all municipal corporations shall have the general powers mentioned in Ohio General Code Division II, Chapter I, and among the general powers there enumerated is the power, set forth in §3647 as follows:

"To open, construct and keep in repair sewage disposal works, sewers, drains and ditches  *  *  *  ."

And §3939 GC provides:

"Each municipal corporation in addition to other powers conferred by law shall have powers—
" '10. To construct sewers, sewage disposal works, flushing tunnels, drains and ditches.' "

This expressly granted power to construct sewers, drains and sewage disposal works carries by necessary implication under the principles above set forth, full power to make and

enter into contracts necessary or proper for the exercise of such power, unless such contracts are prohibited by statute or are against public policy. In the exercise of its authorized functions and powers, a municipal corporation may, unless expressly prohibited by statute or charter, acquire or contract for the acquisition of land or rights in land located outside of its corporate limits. See 3 McQuillin, Municipal Corporations 2nd Ed. Rev. Sec. 1210. Thus, a general power to construct sewers empowers a municipal corporation to acquire and to contract for the acquisition of sewer outlets or sewer rights outside its corporate limits, even though the statute conferring the power to construct sewers is silent on the subject of acquiring or contracting for land or rights therein outside of its corporate limits. See among others, the following authorities:

4 McQuillin, Municipal Corporations 2 Ed. Rev. Sec. 1551.

Minnesota & M. Land & Improvement Co. v City of Billings, 111 Fed. 972 (C. C. A. 9th Circ.).

McBean v City of Fresno, 112 Cal. 159, 49 Pac. 358.

Langley v Augusta, 118 Ga. 590, 45 S. E. 486.

Callon v City of Jacksonville, 147 Ill. 113, 35 N. E. 223.

Coldwater v Tucker, 36 Mich. 474.

City of New Brunswick v Borough of Milltown, 135 N. J. Eq. 310; 38 Atl. (2d) 288.

The City has cited many cases in support of its position. Principal reliance is based on the cases of **Edwards v City, 109 Oh St 598;** 'City ex rel Diehm v Lakeview Cemetery Assn. (C. P. Ct. Cuyahoga County, Unreported) Erickson v Morrell, 14 N. W. (2d) 89.

We have examined these cases carefully and find that the facts are not analogous to the facts of the instant case—it would lengthen this opinion unduly to discuss in detail these and other cases cited by the City. A digest of all of these cases discloses in each instance distinguishing features of fact which must necessarily exclude them as authority in our determination of the issues here presented.

In an able opinion filed in this case by McNamee J., of Common Pleas Court, there is a discussion of the cases of Brunswick v Milltown, 135 N. J. Eq. 310, 38 Atl. (2d) 288; McNemery et ux v Bellevue Borough, 301 Pa. St. 568; 152 Atl. 563. In commenting on these cases, Judge McNamee said:

"* * * In Brunswick v Milltown, 135 N. J. Eq. 310, 38 Atl. (2d) 288, the court held that evidence showing an increased annual cost of $1500 to the City for the disposal of sewage

of the Village did not warrant the cancellation of the contract by which the City had agreed to dispose of such sewage free of expense to the Village. In connection with this the court said:

" 'That the agreement as thus entered into now entails greater expense and renders performance of the same more burdensome to the complainant than contemplated at the time it was made, is not a sufficient ground for relief by way of cancellation.' " (Opinion page 290.)

And again, in answering the complainant's contention that the contract in the cited cases was invalid, because it was indefinite as to duration, the court said:

"Complainant's contention that the agreement is void as against public policy because it is by its terms perpetual and imposes a never ending burden upon complainant is without merit. The power delegated to the contracting municipalities by the statute contains no limitation with respect to the length of time for which such agreement may be made; hence this agreement made pursuant to such statutory authority may not be condemned because its duration is without limitation." (Ibid 290.)

In McNemery et ux v Bellevue Borough, 301 Pa. St. 568, 152 Atl. 563, in commenting upon a contract by which the Borough of Bellevue was granted permission to lay sewer pipes in the territory of the adjoining Borough of Avalon in return for the privilege granted to twenty-five property owners of Avalon to connect and use the sewer belonging to Bellevue, the court said:

"The Borough of Bellevue had granted permission to twenty-five residents of Avalon to connect with the eighteen-inch sewer. This was the price the former paid to the latter for the privilege of laying the sewer in its territory."

In the instant case the right to convey sewage through and dispose of the same within the territorial limits of an adjoining municipality was obtained by the City upon its promise to pay the price of serving the present and future sewage of the territory of the Village without charge. This agreement cannot be held invalid for the reasons now urged by plaintiff. In executing the agreement of 1916, the City of Cleveland exercised its general power to make contracts necessary and proper to the accomplishment of its public functions and it has not been established that such contract violated

any statute or that it contravened any established principle of public policy. It must therefore be upheld."

While we approve the conclusion of the trial court, we think it should be further emphasized that the continuing use of the right of way granted to the City, together with the continuing operation of the sewage disposal plant within the territorial limits of the Village, together impose a duty upon the City to recognize and fulfill the stated contractual obligations.

Further it is implicit in arguments presented by the City that it would be content to permit the connection of the interceptor provided that it would be paid certain rental charges commensurate with the charges paid by other municipalities for like services. Considering the specific terms of the contract and the continuing substantial benefits daily accruing to the City under it, it is our view that the City cannot repudiate its obligations while retaining the benefits. Certainly a court of equity should not grant the injunctive process in aid of such a purpose.

Counsel for the City has stressed the perpetual nature of the obligations imposed under the contract. However, it must be remembered that both parties are equally bound. It may be that some time in the future new conditions may arise; for instance the City may eventually abandon the right of way created under the existing contract and conceivably may cease to use the property now located in the Village for sewage disposal purposes. If such or any similar situations should develop the parties may then seek a further determination of the rights and liabilities under such materially changed conditions.

For the reasons stated, a decree will be entered for the defendant; the injunction prayed for is denied and the petition dismissed at the costs of plaintiff appellant. Order See Journal.

MORGAN, J, and SKEEL, J, concur.