Milltown seeks to reverse a judgment in favor of New Brunswick in the sum of $378 entered in the Middlesex County District Court. The judgment was for the treatment of sewage for the months of June and July, 1945, and was rendered on the theory that a contract between the municipalities entered into in 1914 with reference to treatment of Milltown's sewage was terminable on reasonable *Page 115 
notice, that New Brunswick gave such notice terminating the contract on May 31, 1945, and that the amount of the judgment represents the reasonable value of such treatment for the aforesaid months.
The questions raised and argued on this appeal require a review of the antecedent events which led to the execution of the contract. In 1912 one of the sources of the potable water supply of New Brunswick was Lawrence Brook which ffows through Milltown. In that year the State Board of Health served notice upon certain residents of Milltown to cease polluting Lawrence Brook. The officials of the two municipalities conferred on the problem and the conferences terminated in the execution of a contract on June 18, 1914, by which Milltown agreed to construct collecting sewers within its limits and connect by a trunk line sewer with the New Brunswick sewer system. It also agreed that neither it nor any of its residents would discharge polluted water into Lawrence Brook but would pump all such water through the new sewer system. New Brunswick contracted to contribute $12,500 toward the construction of Milltown's new sewer system and to "take charge, and dispose of, all sewage received from the Borough of Milltown, in the same manner as its own sewage." When the above contract was entered into, and thereafter until 1937, New Brunswick deposited its sewage, raw and untreated, into the Raritan River. Prior to New Brunswick contracting with Milltown, the State Board of Health had instituted proceedings in the Court of Chancery to restrain New Brunswick from polluting the Raritan River. Therefore New Brunswick was fully aware that it would have to construct a sewage disposal plant in the future. In 1937, because of proceedings instituted by the State Board of Health, New Brunswick put into operation a sewage disposal plant and thereafter all sewage passing through the New Brunswick system, including the sewage from Milltown, was treated before deposit in the Raritan River. No attempt was made to charge Milltown for treating its sewage from 1937, when the disposal plant commenced to operate, until 1941 when New Brunswick passed a resolution that notice *Page 116 
be given to Milltown that unless it would pay the cost of treating its share of the sewage, New Brunswick would cut off the flow and prevent Milltown's sewage from entering its system. The notice producing no payments from Milltown, an action was started in the former Court of Chancery, praying cancellation of the agreement of June 18, 1914. The Court of Chancery dismissed the bill of complaint holding (a) that New Brunswick had authority to enter into such a contract, (b) that because the agreement "now entails greater expense and renders performance of the same more burdensome to the complainant than contemplated at the time it was made is not a sufficient ground for relief by way of cancellation" and (c) that the agreement "may not be condemned because its duration is without limitation." New Brunswick v.Milltown, 135 N.J. Eq. 310 (Ch. 1944). An appeal from this decree was taken but not prosecuted to a conclusion. In February, 1945, New Brunswick passed a resolution terminating the 1914 agreement and notified Milltown that its flow of sewage would be cut off on June 1. Prior thereto on May 29, a further resolution was passed stating that the 1914 agreement had been ended by the February resolution and then proceeded to fix a charge of $35 per million gallons for treating Milltown's sewage. Notice of the last resolution was sent to and received by Milltown. Acting on the February resolution, Milltown was billed $378 for the June and July, 1945, treatments, it refused to pay and suit was commenced in the Middlesex County District Court. Milltown countered with a bill of complaint in the then Court of Chancery seeking and obtaining a decree to enjoin the District Court action. Milltown v. New Brunswick, 138 N.J. Eq. 552 (Ch.
1946). On appeal the decree was reversed, the court saying that "The issue of terminability may therefore be determined originally in the law court. No view is here intended with respect to the merits of that issue." Milltown v. NewBrunswick, 140 N.J. Eq. 565 (E. A. 1947).
The sole question for determination is as to the terminability of the agreement between the municipalities dated June 18, 1914. The contract itself contains no provision as *Page 117 
to its termination. The defendant contends that the contract imposes a perpetual obligation upon New Brunswick to dispose of Milltown's sewage, or if the obligation is not perpetual, that then it exists for a reasonable length of time and that a reasonable length of time is so long as New Brunswick uses Lawrence Brook as its potable water supply. Turning to the agreement of June 18, 1914, it recites that New Brunswick desires to prevent the pollution of Lawrence Brook, that residents and manufacturers of Milltown are drawing water from Lawrence Brook and returning it in a polluted condition, that Milltown, under orders of the State Board of Health, has prepared plans to filter such water before returning it to the brook, that New Brunswick protested such filtration system and urged that instead of returning the water to the brook, it be sewered to some other outlet, that New Brunswick has requested Milltown to abandon the filtration system and to construct a sewer to connect with the New Brunswick sewer so that such sewage will pass through the New Brunswick sewer system rather than be returned to Lawrence Brook and that New Brunswick has offered to defray part of the expenses of the construction of such sewer by Milltown to connect with New Brunswick's system. After these aforesaid recitals, Milltown agreed (1) to construct a sewer system to connect with the sewers of New Brunswick; (2) that neither Milltown nor its residents or industries would discharge polluted waters into Lawrence Brook; (3) to permit New Brunswick to inspect the construction of the proposed Milltown sewerage system which passes along and across Lawrence Brook. New Brunswick agreed on its part (1) to pay $12,500 toward the construction of the Milltown sewerage system; (2) "that it will take charge and dispose of all sewage received from the Borough of Milltown through the twelve inch force main to be constructed under the sewer system adopted by said Borough from the time that the same reached the sewerage system of the City of New Brunswick, * * *" (3) "that it will dispose of all sewage so received from the Borough of Milltown in the same manner as its own sewage." *Page 118 
The guide in a situation such as the present is stated in 1Williston on Contracts, § 38, "The promise contained in an offer may not specify exactly the time at which performance is to be made and may not contemplate exact definition by the acceptor, so that the ultimate agreement may be as indefinite as the offer. In such a case it is necessary first to interpret the promise in the light of all surrounding circumstances, and with reference to its subject matter, in order to ascertain the intention of the parties. It may be that so interpreted the promise means perpetual performance; but it may mean performance is to begin in a reasonable time or to be continued for a reasonable time; or it may mean that the time was simply left indefinite with the expectation that the parties might continue performance as long as they pleased or that they would subsequently settle that term of the promise. It is only in this last class of cases that the question of indefiniteness can arise. It is not often that a promise will properly be interpreted as calling for perpetual performance. * * * More commonly the true interpretation will mean some period short of infinity; and partly in order to carry out supposed actual intention of the parties and partly, doubtless, in order to prevent an offer or agreement from being ineffectual because too indefinite, courts will, where the contract contemplates a single act or exchange of acts, unless the circumstances show a contrary intention, interpret a promise which does not in terms state the time of performance as intending performance in a reasonable time. * * * Nevertheless, not infrequently promises requiring continuing performance (other than contract of service) have been interpreted as requiring performance for a reasonable time, or until terminated by a reasonable notice. All the circumstances of each case must be considered in reaching a conclusion. Especially if consideration for such a promise is partly executed a court will be reluctant to hold that the promise is determinable at the promisor's pleasure."
In City of Cleveland v. Village of Cuyahoga Heights,75 N.E.2d 99, Cleveland sought to enjoin the village from connecting with and discharging sewage into an interceptor *Page 119 
sewer constructed and maintained by the city through the village. The contract between the city and the village gave to the village the right to discharge all of its present and future sanitary sewage into said intercepting sewer. In seeking the injunction, one of the reasons argued was that the contract granted a perpetual property right in the village to have its sewage disposed of through the intercepting sewer free of charge.
In denying the injunction and dismissing the petition, the court quoted from New Brunswick v. Milltown, 135 N.J. Eq. 310
(Ch. 1944), as follows: "Complainant's contention that the agreement is void as against public policy because it is by its terms perpetual and imposes a never ending burden upon complainant is without merit. The power delegated to the contracting municipalities by the statute contains no limitation with respect to the length of time for which such agreement may be made; hence this agreement made pursuant to such statutory authority may not be condemned because its duration is without limitation" and then went on to say: "* * * we think it should be further emphasized that the continuing use of the right of way granted to the City, together with the continuing operation of the sewage disposal plant within the territorial limits of the Village, together impose a duty upon the City to recognize and fulfill its stated contractual obligations.
"Further it is implicit in arguments presented by the City that it would be content to permit the connection of the interceptor provided that it would be paid certain rental charges commensurate with the charges paid by other municipalities for like services. Considering the specific terms of the contract and the continuing substantial benefits daily accruing to the City under it, it is our view that the City cannot repudiate its obligations while retaining the benefits. Certainly a court of equity should not grant the injunctive process in aid of such a purpose.
"Counsel for the City has stressed the perpetual nature of the obligations imposed under the contract. However, it must be remembered that both parties are equally bound. *Page 120 
It may be that some time in the future new conditions may arise; for instance the City may eventually abandon the right of way created under the existing contract and conceivably may cease to use the property now located in the Village for sewage disposal purposes. If such or any similar situations should develop the parties may then seek a further determination of the rights and liabilities under such materially changed conditions."
State v. Taylor, 79 N.E.2d 127, 129 (Sup. Ct. of Ohio
1948), a case in many respects similar to the instant case holds: "It is our conclusion that, so far as the agreement in question grants to The Ohio State University the right to connect with and use the sewers of the campus without cost and relieves the university from any assessment for the construction of the sewer, it is valid, but that the city is not thereby obligated to perpetually treat the sewage emptied into the sewer from the campus of The Ohio State University without cost or expense to the university and at the cost and expense of other users of the sewerage system."
In arriving at this decision the court sustained the right of the university to connect with and use the sewers without cost. Ohio State University is located within the city limits of Columbus and the municipality was by statute given the right to charge sewer rents, and the court held that the contract wasultra vires to the extent that it attempted to bargain away the legislative or governmental power of the municipality to charge sewer rates. It was pointed out that the boundaries of the campus of the university are not fixed, nor is there any limitation upon the future demand for sewer services, and the court remarks upon the past increase in the extent of the campus and that a continued increase must be anticipated. In the present case, no such threat of future excessive demands for disposition of sewage is possible because of the fact that New Brunswick's obligation is limited by the provision in the contract for a twelve-inch pipe, and under the contract there is no obligation upon New Brunswick to dispose of Milltown's sewage in an amount over and above that which would pass through a twelve-inch pipe. *Page 121 
Following out the thought expressed in City of Cleveland v.Village of Cuyahoga Heights, supra, we point out that the contract between New Brunswick and Milltown was intended to preserve to New Brunswick its potable water supply from Lawrence Brook and intended to accomplish that purpose by permitting Milltown to dispose of its sewage in the same manner in which New Brunswick disposed of its own sewage. However, there are implicit in this arrangement certain qualifications. The prescribing of a twelve-inch line connecting with the New Brunswick sewage system implies clearly that the capacity of that pipe is the limit on the quantity of sewage which New Brunswick agrees to dispose of, and there is the further implicit condition that the contract is dependent upon the continued use by New Brunswick of Lawrence Brook as a source of its potable water supply. So long as these conditions remain without material change, New Brunswick may not accept the benefit of its contract, i.e., the protection of its potable water supply, and at the same time repudiate its obligation to dispose of Milltown's sewage in the same manner as its own sewage. In the words of the court in City of Clevelandv. Village of Cuyahoga Heights, supra, "It may be that some time in the future new conditions may arise; for instance the city may eventually abandon the right of way created under the existing contract and conceivably may cease to use the property now located in the village for sewage disposal purposes. If such or any similar situations should develop the parties may then seek a further determination of the rights and liabilities under such materially changed conditions."
For the reasons herein stated, the judgment under appeal is reversed. *Page 122