The City of New Brunswick by this bill of complaint prays that the written agreement made June 18th, 1941, between complainant and the defendant, Borough of Milltown, may by the decree of this court be canceled.
The agreement recites that complainant desired to prevent the pollution by the Borough of Milltown of the waters of Lawrence Brook and of the storage reservoir of the City of New Brunswick; that pursuant to orders from the State Board of Health to the Borough of Milltown plans for filter beds had been prepared for the purpose of filtering such water; that complainant protested to the State Board of Health on August 27th, 1912, against the approval of such plans and urged that the water instead of being returned to the brook should be seweraged to some other outlet and requested defendant to abandon its planned filtration system and to construct a sewer to connect with the sewer owned by complainant so that such water empty into the New Brunswick sewer system instead of Lawrence Brook, and offered to defray some part of the expense for such purpose as indicated in a memorandum of an agreement between the Milltown Sewer and Water Commission and the Advisory Water Commission of New Brunswick signed September 18th, 1913.
The agreement then provides that in consideration of $1 and the mutual advantages and benefits to be derived by each municipality, the Borough of Milltown agrees: (1) to construct a sewage disposal system as shown on certain plans made by Clyde Potts, civil engineer, and filed with the New Jersey State Board of Health; (2) that Milltown will not discharge into or return to Lawrence Brook waters which have been used or claimed to have become polluted by such use, but will cause same to be emptied into its sewerage system provided for in the agreement, when built; (3) that it will permit New Brunswick to employ an inspector to inspect the construction of the sewerage system, the cost thereof to be paid by complainant.
On complainant's part, the agreement provides: (1) That New Brunswick will pay towards the construction of the sewerage system by Milltown the sum of $12,500 upon completion *Page 312 
of such system when the same is connected with the sewer of complainant at or near Musical String Factory on Georges Road; (2) that New Brunswick will take charge of and dispose of all sewage received from Milltown through the twelve-inch force main to be constructed under the sewer system adopted by Milltown from the time the same reaches the sewerage system of New Brunswick; (3) that "it (New Brunswick) will dispose of all sewage so received from the Borough of Milltown in the same manner as itsown sewage." (Italics mine.)
Sometime in November, 1941, complainant by resolution notified the defendant that from and after January, 1942, it would discontinue the arrangement made under said contract, unless defendant would pay complainant the actual cost of treating its sewage, which complainant said would be $1,500 per annum, and threatened to cut off the flow of defendant's sewage where it enters its sewer system.
From the date of the agreement until February, 1937, complainant disposed of its own and defendant's sewage by discharging the same, in its raw and untreated state, into the Raritan River. However, since then because of action brought by the State Board of Health which resulted on April 2d 1935, in the issuance of an injunction restraining complainant from discharging its untreated sewage into the Raritan River, complainant has been obliged to chemically treat all sewage before discharging the same into the river. The cost of treating defendant's sewage amounts to $1,500 per annum and the capacity of the treatment or disposal plant which complainant constructed has, since 1941, due in part to the increase of industrial sewage within complainant's corporate limits and to substantial increase in defendant's sewage, become overtaxed, and so complainant seeks to be relieved of its agreement.
The bill prays cancellation of the agreement (a) upon the ground that it was beyond complainant's power and authority to enter into such an agreement, and (b) that if the agreement at the time of its execution was valid, it is no longer bound thereby because the intention of the contracting parties as expressed in the agreement was to dispose of defendant's *Page 313 
sewage in the same manner as complainant was disposing of its sewage at the date of the agreement, namely, by discharging it in a raw and untreated state into the Raritan River, which it may now no longer do because of the injunction; (c) that the contract is against public policy in that it imposes a perpetual obligation.
 A.
There existed at the time the agreement was made ample authority for the making of such agreement under the provisions of chapter 28, P.L. 1907, as amended by chapter 206, P.L.1913; chapter 285, P.L. 1907, and chapter 262, P.L. 1914.
These statutes authorize cities maintaining a public water supply derived from sources beyond the city's limits to protect the same from pollution by constructing, maintaining and operating within the territory from which the supply is derived or through which it flows a system of drains and sewers for the purpose of disposing of sewage or other polluted matter, or by providing for the payment of a portion of the expense of the construction of a system of sewers to any municipality from which said water flows.
The complainant did not construct a system of sewers or drains in the Lawrence Brook territory as authorized by the act of 1907,supra, but paid the defendant a portion of the cost of constructing its sewer system under chapter 262, section 1, of the act of 1914, supra, and so eliminated the necessity of such construction on its part, and then treated its own sewer system, already constructed, and the trunk line passing along and crossing Lawrence Brook as such authorized system provided for in chapter 28 of the 1907 statute in order to enter the contract pursuant to section 6 thereof. Both the act of 1907 and the act of 1914 deal with the prevention of pollution of water supply systems in cities having their source outside the city limits, and provide a method for such prevention. The foregoing acts of the legislature were repealed by P.L. 1917, chs. 204 and 208, at the time of the passage of "An act concerning municipalities" (Home Rule Act), P.L. 1917 ch. 152; R.S. 40:42-1 et seq. *Page 314 
 B.
While negotiations leading to the actual signing of the contract were being conducted, the complainant was already under order from the State Board of Health not to empty its sewage in its untreated state into the Raritan River, and was aware that suit in Chancery against it by the State Board of Health would follow eventually if compliance with its order was not made. So complainant knew when it made the contract to dispose of the sewage of the Borough of Milltown "in the same manner as its own sewage" that if an injunction against it was decreed, that it would be obliged to treat its own sewage and that of Milltown through its sewage disposal plant. This conclusion accords with all the facts. That the agreement as thus entered into now entails greater expense and renders performance of the same more burdensome to the complainant than contemplated at the time it was made is not a sufficient ground for relief by way of cancellation.
 C.
Complainant's contention that the agreement is void as against public policy because it is by its terms perpetual and imposes a never ending burden upon complainant is without merit. The power delegated to the contracting municipalities by the statute contains no limitation with respect to the length of time for which such agreement may be made; hence this agreement made pursuant to such statutory authority may not be condemned because its duration is without limitation.
Bill of complaint dismissed. *Page 315