BOROUGH OF MILLTOWN, a municipal corporation, complainant-respondent,

*v.*

CITY OF NEW BRUNSWICK, a municipal corporation, defendant-appellant.

[Submitted June 2d, 1947. Decided October 21st, 1947.]

*Mr. Paul W. Ewing,* for the appellant.

*Messrs. Hicks, Kuhllhau, Thompson & Deshler (Mr. John B. Molineux),* for the respondent.

The opinion of the court was delivered by

SCHETTINO, J.

The City of New Brunswick appeals from a final decree of the Court of Chancery restraining it from proceeding with an action at law against the Borough of Milltown to recover money charges for the treatment of sewage of the borough. The decree was based upon a finding that the issues in the action at law were concluded in an earlier proceeding between the parties in the Court of Chancery.

We are of the opinion that the decree under review must be reversed.

Milltown is a municipal corporation located in Middlesex County about three miles southeast of the City of New Brunswick. A stream known as Lawrence Brook flows through the center of Milltown and empties into the Weston's Mill Pond which is the potable water supply of the City of New Brunswick.

In 1912 Milltown had no sewer system. About that time the State Board of Health served notice on 27 Milltown residents to the effect that they must cease polluting Lawrence Brook. Thereupon Milltown drew plans and specifications for the construction of a sewage disposal plant, the effluent of which would be discharged into Lawrence Brook. Experts appear to agree that effluent of a properly constructed and operated sewage disposal plant does not pollute a potable water supply. New Brunswick objected to this plan of construction because of adverse public reaction to the discharge of effluent into a water supply.

A hearing on the proposed construction was held by the State Board of Health as a result of which that body unofficially suggested that the parties work out a satisfactory agreement for the disposing of the sewage of Milltown. Many conferences were thereafter held and a contract was executed between Milltown and New Brunswick, dated June 18th, 1914.

The contract provided that Milltown would construct a sewer system within its borough limits and a trunk sewer line from the borough limits to the New Brunswick sewer system. Milltown agreed that neither it nor its residents would discharge or return into Lawrence Brook waters polluted by use but would cause all of such waters to be emptied into this new sewer system. On its part New Brunswick agreed to contribute $12,500 to the construction of the Milltown system and to "take charge and dispose of all sewage received from the Borough of Milltown" in the same manner as its own sewage.

Pursuant to this contract the Milltown sewer system was constructed. At the time the two sewer systems were connected, New Brunswick was depositing its sewage untreated into the Raritan River. It continued so to dispose of its and Milltown's sewage until about 1937. At that time there was put into operation a sewage disposal plant constructed by New Brunswick at its own cost and at the behest of the State Board of Health. Up to the present time New Brunswick has treated in its new plant the sewage received by it from Milltown.

On November 18th, 1941, New Brunswick passed a resolution directing that notice be given to Milltown that, unless Milltown would pay for the cost of treating Milltown's sewage, New Brunswick would cut off the flow of the sewage from Milltown and prevent it from entering the sewerage system of New Brunswick. Milltown took no action other than to affirm, by resolution, the validity of the agreement.

On February 27th, 1942, New Brunswick filed a bill of complaint in the Court of Chancery, praying that the written agreement of 1914 be decreed to be void and inoperative as against New Brunswick and that the contract be set aside and canceled and asking for an injunction restraining Milltown from depositing its sewage into the sewer system of New Brunswick. The issues there raised will presently be discussed. On final hearing, Vice-Chancellor Stein advised a final decree dismissing the bill. *City of New Brunswick v. Borough of Milltown (1944), 135 N. J. Eq. 310.* It is

this decree which was held in the present case to have effectively disposed of the issues raised in the action at law.

On December 8th, 1944, a notice of appeal from said decree to this court was filed by New Brunswick. On February 27th, 1945, the appeal was dismissed by stipulation of the parties.

On February 20th, 1945, seven days before the dismissal of the appeal, New Brunswick adopted a resolution terminating the contract of June 18th, 1914, and notified Milltown that New Brunswick would cut off the flow of sewage on June 1st, 1945.

However the sewage was not cut off on the day specified in the resolution. On May 29th, 1945, New Brunswick adopted another resolution reciting that the contract of June 18th, 1914, was ended by the resolution of February 20th, 1945, and fixing a charge of $35 per million gallons for treating and disposing of Milltown's sewage. Notice of this resolution was sent to Milltown.

On September 22d, 1945, Milltown received a bill of $388.50 for the cost of disposing of its sewage during July and August of 1945. Milltown refused to pay. On January 18th, 1946, New Brunswick instituted an action in the First Judicial District Court of the County of Middlesex to recover the said charge. Thereupon Milltown filed a bill of complaint in the Court of Chancery, praying that New Brunswick be enjoined from continuing its suit in the District Court on the ground that all of the issues involved therein had been determined adversely to New Brunswick in the first suit in the Court of Chancery.

New Brunswick contends that the issue of terminability of the contract was not in fact litigated, or necessarily involved, in the first Chancery suit and therefore that this issue was not *res adjudicata*. The Court of Chancery found that the issue of terminability had been concluded in favor of Milltown in the prior litigation and entered a final decree here under review enjoining the action at law.

The rule of *res adjudicata* is that the judgment of a court of competent jurisdiction is a final and conclusive settlement between the parties and their privies of the issues actually presented or necessarily involved in the litigation. The par-

ties so bound cannot again contest those issues in another proceeding either in that or in any other court. *West New York Improvement Co.* v. *Town of West New York* *(1918)*, *88 N. J. Eq. 571; In re Leupp (1931), 108 N. J. Eq. 49, 53; Stambovsky* v. *Cohen (1938), 124 N. J. Eq. 290, 295; Meier Credit Co.* v. *Yeo (1942), 129 N. J. Law 82, 86; 30 Am. Jur., "Judgments," 923 § 179.* The sole question we need here consider is whether the issue of terminability of the agreement of June 18th, 1914, was actually determined or necessarily involved in the earlier Chancery proceeding. We think it was not.

An examination of the bill of complaint in the first Chancery proceeding discloses that New Brunswick there sought to have the agreement adjudged null and void on the ground that New Brunswick lacked the power to enter into it and on the additional ground that, if the agreement were initially valid, it ceased to be legally or equitably binding upon the installation of the sewage disposal plant because the parties intended the agreement to be operative only so long as the sewage of the municipalities was discharged in its raw and untreated state into the Raritan River. The case as there presented did not actually or necessarily involve the issue whether the contract, if valid, could thereafter be terminated by either party upon proper notice.

In his opinion in that case the Vice-Chancellor, dealing with the issue of the initial validity of the agreement, stated that the agreement "may not be condemned because the duration is without limitation." *City of New Brunswick* v. *Borough of Milltown (1944), 135 N. J. Eq. 310, 314.* New Brunswick, apparently fearful that the quoted language might be construed to mean that the agreement could not be terminated by proper notice, sought by an application for reargument, to be heard on the issue of terminability. The Vice-Chancellor denied the application. Neither an order nor a memorandum appears with respect thereto. In the trial of the present case, counsel stipulated that in denying the application for reargument the Vice-Chancellor stated orally that he had already disposed of that matter in his written opinion previously filed.

The final decree in that cause merely ordered the bill dismissed. The recitals in the decree did not go beyond the findings contained in the written opinion. It appears to us that the finding that the agreement was of unlimited duration does not amount to be a finding that the contract may not be terminated upon proper notice. It is at most a finding that, if the parties take no steps toward termination, the agreement will continue to operate without limitation as to time. The question whether the agreement was terminable by the action of a party thereto is a wholly distinct question. Since the issue of terminability was not in fact, or necessarily, involved in that cause, and was not in fact there determined, we are of the view that the issue is not *res adjudicata*.

The issue of terminability may therefore be determined originally in the law court. No view is here intended with respect to the merits of that issue.

The decree under review is reversed, without costs, and the cause remanded to the Court of Chancery with instructions to dismiss the bill of complaint.

*For affirmance* — DONGES, WACHENFELD, EASTWOOD, WELLS, DILL, McGEEHAN, JJ. 6.

*For reversal* — THE CHIEF-JUSTICE, BODINE, HEHER, COLIE, BURLING, FREUND, McLEAN, SCHETTINO, JJ. 8.